UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL KENNETH BURROWS,

                Plaintiff,

v.                                              3:15-CV-1266
                                              (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LACHMAN & GORTON                   PETER A. GORTON, ESQ.
 Counsel for Plaintiff
1500 E. Main St.
P.O. Box 89
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.       FERGUS J. KAISER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 18.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Michael Kenneth Burrows ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 17.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was 38 years old at the time of the hearing. (T. 36.) He received a GED diploma. (*Id.*) Generally, Plaintiff's alleged disability consists of stress, anxiety, and "back issues." (T. 183.)

### B.     Procedural History

On September 27, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 98.)[1] Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 17, 2014, Plaintiff appeared before the ALJ, Edward I. Pitts. (T. 29-78.) On June 30, 2014, ALJ Pitts issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-28.) On September 18, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 14-24.) First, the ALJ found that Plaintiff had not engaged in

---

[1]     In a written statement dated June 26, 2014, Plaintiff amended his alleged onset date of disability to September 27, 2012. (T. 241.) As a result, Plaintiff would no longer be entitled to benefits under Title II because he would not have a disability insured status on the date of onset.

substantial gainful activity since September 27, 2012. (T. 15.) Second, the ALJ found that Plaintiff had the severe impairments of borderline intellectual functioning, a depressive disorder, and an anxiety disorder. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 16-18.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work with additional non-exertional impairments. (T. 18.) The ALJ found that Plaintiff was limited to unskilled work with no more than occasional social contact with co-workers and supervisors and frequent social contact with the general public. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 22-24.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ's mental RFC determination was not supported by substantial evidence. (Dkt. No. 9 at 5-8 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to include the limitations caused by Plaintiff's borderline intellectual functioning, individually and in combination with the psychiatric impairments, in the RFC determination and the hypothetical give to the vocational expert ("VE"). (*Id.* at 8-16.) Third, Plaintiff argues the RFC does not properly account for Plaintiff's limitations in dealing with stress, or maintaining attention and concentration. (*Id.* at 16-

18.) Fourth, and lastly, Plaintiff argues the step five determination was not supported by substantial evidence. (*Id.* at 18-21.)

    B.  **Defendant's Arguments**

In response, Defendant makes three arguments. First, Defendant argues the ALJ's RFC determination was supported by substantial evidence. (Dkt. No. 17 at 6-9 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly assessed the medical opinions of record. (*Id.* at 9-12.) Third, and lastly, Defendant argues the ALJ's step five determination was supported by substantial evidence. (*Id.* at 12-14.)

## III. RELEVANT LEGAL STANDARD

    A.  **Standard of Review**

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

(1) whether the claimant is currently engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment or combination of

impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

For ease of analysis, Plaintiff's arguments will be address out of order and in a consolidated manner.

### A.   The ALJ's Mental RFC Determination

Plaintiff's RFC is the most he can still do despite his limitations. 20 C.F.R. § 416.945(a)(1). In making an RFC determination, the ALJ will base his determination on an assessment of all the relevant evidence in the case record. *See id.* Further, Plaintiff's RFC is his maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis. *See id.* at § 416.945(b)-(c). "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009).

In formulating an RFC the ALJ will afford weight to the medical opinion evidence in the record. The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. § 416.927(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the treating source opinion should receive, even if it is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).

**i.)     Treating Psychologist, Robert Russell**

Plaintiff received mental health testing and treatment from Dr. Russell. On February 12, 2013, Dr. Russell completed a "Disability Report – Psychiatric" form for the Broome County Department of Social Services ("DSS"). (T. 273.) Therein, Dr. Russell indicated that he had been treating Plaintiff from August of 2012 to February 2013. (*Id.*) He indicated that Plaintiff was "very limited" in his ability to: understand and remember instructions; carry out instructions; maintain attention/concentration; interact appropriately with others; maintain socially appropriate behaviors without extremes; and function in a work setting at a consistent pace. (*Id.*) He opined that Plaintiff was "moderately limited" in his ability to: make simple decisions and maintain basic

7

standards of hygiene and grooming. (*Id.*) The form completed by Dr. Russell did not contain definitions of the terms used. (*Id.*)

Dr. Russell performed an assessment on August 17th and 22nd of 2012. (T. 281-282.) Dr. Russell observed that Plaintiff's appearance was disheveled; his hygiene was good; he was alert; his affect, mood, and speech were normal; he had poor remote memory; he had below average intellect; and his insight and judgment were poor. (T. 282.) Dr. Russell noted that Plaintiff dropped out of the 12th grade because his partner became pregnant and he was able to obtain his GED. (T. 281.) Dr. Russell further noted that Plaintiff was able to work as a store clerk and payroll currier. (*Id.*) Notations indicated that Plaintiff stopped work due to layoffs and physical injury. (*Id.*)

On February 11, 2013, Dr. Russell conducted a psychological evaluation. (T. 277-279.) Dr. Russell concluded that based on his evaluation, Plaintiff's full scale IQ of 71 corresponded with a diagnosis of borderline intellectual functioning. (T. 278.) On July 12, 2013, Dr. Russell noted that he was retiring and felt that Plaintiff "had made fair gains towards his discharge criteria. Thus his case will be closed." (T. 284.) Plaintiff reported that he had not been angry as much. (*Id.*) Elsewhere, notations from July 12, 2013, indicated that Plaintiff had been "doing better overall," his case would be closed, and he had gained "at least a couple of coping strategies to help him cope with life stressors." (T. 291.)

The ALJ afforded Dr. Russell's February 2013 statement "reduced weight." (T. 21.) The ALJ reasoned that the limitations provided in the statement were not consistent with Dr. Russell's treatment notes and overall evidence, specifically the opinions of consultative examiner Cheryl Loomis, Ph.D. and non-examining State

8

agency medical consultant, Dr. Blackwell. (*Id.*) The ALJ further reasoned that the form completed by Dr. Russell contained a "broad opinion" specific to DSS eligibility, which has "substantially different" standards that Social Security. (T. 22.) The ALJ stated that the limitations were not supported by Plaintiff's mental health treatment notes which showed that he had modest improvement with treatment and medication. (*Id.*)

Plaintiff argues that the ALJ erred in affording Dr. Russell's February 2013 statement reduced weight because: 1) the doctor's opinion was consistent with his examinations, testing, and overall evidence, 2) the ALJ improperly compared the doctor's opinion with the opinions of the state agency medical consultants, and 3) the doctor's opinion was actually supported by Dr. Loomis's opinion. (Dkt. No. 9 at 9-12 [Pl.'s Mem. of Law].)

First, as outlined by Defendant, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

9

Here, the ALJ outlined Dr. Russell's opinion and evidence in the record which he found to be inconsistent with that opinion. (T. 20.) For example, the ALJ relied on mental health treatment notes indicated that Plaintiff was doing better and his case was being closed, treatment notes indicating Plaintiff was doing well from a psychological standpoint and stable. (*Id.*, *referring to* T. 291, 309.) Where a treating physician's treatment notes do not corroborate the physician's limitations, and are contradicted by other medical evidence, the Second Circuit has held that an ALJ may properly decline to accord that treating provider's opinion significant weight. *Kennedy v. Astrue*, 343 F. App'x. 719, 721 (2d Cir. 2009).

Second, Plaintiff argues that the ALJ erred in comparing Dr. Russell's opinion to those of Dr. Loomis and Dr. Blackwell because neither Dr. Loomis nor Dr. Blackwell had the benefit of Plaintiff's intellectual testing. (Dkt. No. 9 at 10 [Pl.'s Mem. of Law].) To be sure, neither Dr. Loomis nor Dr. Blackwell had access to Dr. Russell's February 2013 evaluation. However, Dr. Loomis noted Plaintiff had a history of special education and noted that Plaintiff appeared to be below-average in the area of cognitive functioning. (T. 264, 266.) Dr. Loomis's observations were consistent with Dr. Russell's findings that Plaintiff's intellectual functioning was "low to very low." (T. 275.) Because Dr. Loomis based her opinion, in part, on Plaintiff's below average intellectual functioning, which was consistent with Dr. Russell's findings, the ALJ did not err in comparing the two opinions.

For the same reasons, the ALJ did not err in comparing the opinion of Dr. Blackwell and Dr. Russell. Although Dr. Blackwell did not review Dr. Russell's February

evaluation, he did review Dr. Loomis's opinion which took into consideration Plaintiff's below average intellectual functioning.

Third, Plaintiff argues that the ALJ's conclusion that Dr. Russell's opinion was inconsistent with Dr. Loomis's opinion was "wrong and disingenuous." (Dkt. No. 9 at 10-11 [Pl.'s Mem. of Law].) Again, it is not enough for Plaintiff to disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. Although Plaintiff argues that portions of Dr. Russell's opinion and Dr. Loomis's opinion were consistent, the ALJ, for the reasons stated further herein, properly assessed Dr. Loomis's opinion. Further, contrary to Plaintiff's argument, there is no indication from the ALJ's decision that he was in any way being "disingenuous" regarding his treatment of the opinion evidence. The ALJ's decision presented an accurate and thorough review of the medical evidence in the record.

Plaintiff further argues that Dr. Loomis's opinion cannot constitute substantial evidence contrary to Dr. Russell, a treating source. (Dkt. No. 9 at 11 [Pl.'s Mem. of Law].) The opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983); *see also Snyder v. Colvin*, No. 15-CV-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016).

Therefore, the ALJ properly afforded the February opinion of Dr. Russell reduced weight.

### ii.) Consultative Examiner, Cheryl Loomis, Ph.D.

On December 12, 2012, Dr. Loomis performed a psychiatric evaluation and provided a medical source statement. (T. 264-267.) During the examination, Dr.

Loomis observed that Plaintiff appeared older than his stated age, was appropriately dressed and well groomed, and made appropriate eye contact. (T. 265.) She observed that his speech was fluent and clear, and he had adequate expressive and receptive language. (*Id.*) She observed that his thought processes were coherent and goal directed, his affect was full and appropriate, his mood was euthymic, his sensorium was clear, and he was oriented. (*Id.*) Dr. Loomis noted that Plaintiff's attention and concentration were "mildly impaired, most likely due to intellectual functioning." (*Id.*) Dr. Loomis observed that Plaintiff's recent and remote memory skills were "mildly impaired." (T. 266.) She noted that Plaintiff's intellectual functioning appeared to be below-average. (*Id.*)

In a medical source statement, Dr. Loomis opined that Plaintiff could follow and understand simple directions and instructions and perform simple tasks independently. (T. 266.) She opined that Plaintiff could not maintain attention and concentration. (*Id.*) Dr. Loomis opined that Plaintiff was able to maintain a regular schedule and learn new tasks, but could not perform complex tasks independently or with supervision. (*Id.*) She stated that Plaintiff could relate adequately with others and could not appropriately deal with stress. (*Id.*) She opined that Plaintiff's difficulties were caused by cognitive deficits and psychiatric problems. (*Id.*) Dr. Loomis stated that Plaintiff's psychiatric and cognitive problems did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis. (*Id.*)

The ALJ afforded Dr. Loomis's medical source statement "significant weight." (T. 21.) However, the ALJ noted that the doctor's statements: that Plaintiff could not make appropriate decisions; could not deal with stress; and could not maintain attention and

concentration, were not consistent with the overall evidence, including Dr. Loomis's conclusion and findings. (*Id.*) The ALJ reasoned that although Dr. Loomis stated Plaintiff could not maintain attention and concentration, she noted on examination that Plaintiff's attention and concentration were only mildly impaired. (*Id.*) Further, although Dr. Loomis stated that Plaintiff could not make appropriate decisions or deal with stress, she stated that Plaintiff's overall symptoms did not appear to be significant enough to interfere with his ability to function on a daily basis. (*Id.*)

Plaintiff argues that the ALJ erred in rejecting Dr. Loomis's opinion that Plaintiff could not make appropriate decisions, deal with stress, and maintain attention and concentration because these limitations were consistent with Dr. Loomis's observations and other medical evidence in the record. (Dkt. No. 9 at 13 [Pl.'s Mem. of Law].) Plaintiff also argues that the ALJ had a duty to re-contact Dr. Loomis for clarification. (*Id.* at 13.) Here, the ALJ's determination to not adopt a portion of Dr. Loomis's opinion was supported by substantial evidence.

An ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

Although Dr. Loomis stated that Plaintiff could not maintain attention and concentration, she ultimately opined that he was capable of following and understanding simple directions and instructions and performing simple tasks independently. (T. 266.) Dr. Blackwell reviewed the evidence in the record, including Dr. Loomis's examination and opinion, and opined Plaintiff retained the mental capacity for simple, unskilled work. (T. 87.) On May 24, 2011, and August 19, 2013, Plaintiff's concentration and attention were described as "fair." (T. 314, 323.) A social worker opined that Plaintiff had only a "more than slight" limitation in his ability to maintain attention, concentration and perform activities within a schedule, maintain regular attendance and be punctual. (T. 330.) Therefore, the ALJ did not err in his determination to not adopt Dr. Loomis's statement that Plaintiff could not make appropriate decisions, deal with stress, and maintain attention and concentration because these limitations were consistent with Dr. Loomis's observations and other substantial medical evidence in the record.

The ALJ was under no obligation to re-contact Dr. Loomis. An ALJ has a duty to develop the record, whether or not the claimant is represented. *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996). However, an ALJ need not, seek additional detail from a given provider if the record contains notes from that provider "adequate for the ALJ to determine [the plaintiff's] disability." *Whipple v. Astrue,* 479 F. App'x. 367, 370 (2d Cir. 2012). Therefore, the ALJ properly afforded significant weight to a portion of Dr. Loomis's opinion.

    **iii.)    State Agency Medical Consultant, L. Blackwell, Ph.D.**

On January 18, 2013, non-examining State agency medical consultant, Dr. Blackwell, reviewed the record and provided a medical opinion. (T. 84-96.) Dr.

14

Blackwell ultimately opined that based on the record before her, Plaintiff retained the mental capacity for simple, unskilled work. (T. 87.) The ALJ afforded Dr. Blackwell's opinion "significant weight" due to her programmatic expertise and "relative consistency" with the overall record. (T. 21.)

Essentially, Plaintiff argues that the ALJ erred in affording Dr. Blackwell's opinion "significant weight" because she did not examine Plaintiff and did not review a complete record. (Dkt. No. 9 at 1416 [Pl.'s Mem. of Law].) It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 416.912(b)(6), 416.913(c), 416.927(e). "[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010).

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* No. 15-3399, 2016 WL 3639510 (2d Cir. July 7, 2016); *Snyder v. Colvin,* No. 15-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016).

Further, as stated herein, although Dr. Blackwell did not have access to Plaintiff's intellectual evaluation, she did have access to Dr. Loomis's examination and opinion and Dr. Loomis took into consideration Plaintiff's below average intellectual functioning.

For the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's assessment of the medical opinion evidence in the record be upheld.

Plaintiff also argues that the ALJ's mental RFC determination failed to properly assess and include Plaintiff's limitations in his ability to: maintain attention and concentration; make appropriate decisions; appropriately deal with stress; interact appropriately with others; maintain socially acceptable behavior; function in a work setting at a consistent pace; maintain regular attendance, as well as his cognitive limitations. (Dkt. No. 9 at 5-8 [Pl.'s Mem. of Law].) The ALJ's mental RFC determination was supported by substantial evidence in the record.

The ALJ determined that Plaintiff could perform unskilled work with no more than occasional social contact with co-workers and supervisors and frequent social contact with the general public. (T. 18.) Basic mental work activities include the ability to: understand, carry out, and remember simple instructions; use judgment; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. § 416.921(b)(3)-(6), *see* also SSR 85-15 (S.S.A. 1985).

As stated herein, the ALJ properly weighed the medical opinion evidence in the record. His mental RFC determination was supported by the opinions of Drs. Loomis and Blackwell, other medical evidence in the record, and Plaintiff's statements. Drs.

Loomis and Blackwell ultimately opined that despite his intellectual limitations and his depression/anxiety, Plaintiff was capable of performing simple unskilled work. (T. 87, 266.) Other evidence in the record indicated that Plaintiff's mental impairments were "decently controlled" with medication and Plaintiff's mental conditions were stable. (T. 255, 258.) On March 3, 2013, Plaintiff denied difficulty concentrating or psychiatric symptoms. (T. 310.) Dr. Russell indicated that Plaintiff could be discharged from treatment because he was doing better overall and had his mother and girlfriend for support. (T. 291.)

The ALJ's mental RFC was further supported by other evidence in the record. Despite alleged intellectual and mental limitations, Plaintiff was able to obtain a GED and completed a course in television production. (T. 36.) Plaintiff also worked at a substantial gainful employment level and did not cease working due to mental impairments or limitations. (T. 37, 264.) Plaintiff testified that he enjoyed reading about how to maintain and work cell phones on the internet, collected comic books, and read fiction. (T. 44, 49.)

Plaintiff argues that the ALJ "never discussed" the impact of Plaintiff's intellectual functioning. (Dkt. No. 9 at 8 [Pl.'s Mem. of Law].) However, the ALJ did account for Plaintiff's intellectual functioning. For example, the ALJ determined that despite Plaintiff's limited intelligence, he was able to hold a job for many years and obtain a GED. (T. 20.) The ALJ discussed Dr. Loomis's opinion, which took into account Plaintiff's intellectual functioning. (*Id.*) Further, in his step two analysis, the ALJ discussed in more detail the record containing Plaintiff's intellectual disability and limitations. (T. 17-18.) Although a step two finding is not an RFC determination, the

ALJ's discussion at step two provided insight into the ALJ's overall rational concerning Plaintiff's intellectual abilities. *See Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").

The ALJ's mental RFC determination was supported by the medical opinions of Drs. Loomis and Blackwell, as well as other evidence in the record such as medical treatment notations and Plaintiff's testimony. It is therefore recommended that the ALJ's mental RFC determination be upheld.

### B. Limitations in Dealing with Stress and Maintaining Attention and Concentration

Plaintiff argues that although the RFC and hypothetical given to the VE limit Plaintiff to unskilled work, that limitation did not properly account for Plaintiff's assessed limitations in maintaining attention and concentration and dealing with stress. (Dkt. No. 9 at 16-21 [Pl.'s Mem. of Law].)

In support of his argument Plaintiff relies on the Second Circuit decision in *McIntyre v. Colvin*, 758 F.3d 146 (2d Cir. 2014). (Dkt. No. 9 at 16-18 [Pl.'s Mem. of Law].) To be sure, as outlined by Plaintiff, the Second Circuit held that "an ALJ's hypothetical should explicitly incorporate any limitations in concentration, persistence, and pace." *McIntyre*, 758 F.3d at 152. However, the Court in *McIntyre* went on to reason that:

> an ALJ's failure to incorporate non-exertional limitations in a hypothetical (that is otherwise supported by evidence in the record) is harmless error if (1) "medical evidence demonstrates that a claimant can engage in simple,

18

routine tasks or unskilled work despite limitations in concentration, persistence, and pace," and the challenged hypothetical is limited "to include only unskilled work"; or (2) the hypothetical "otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]"

*Id.,* citing *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176,1180 (11th Cir.2011).

Here, as in *McIntyre*, substantial evidence in the record demonstrated that Plaintiff could engage in "unskilled work with no more than occasional social contact with co-workers and supervisors and frequent social contact with the general public" despite limitations in concentration, persistence and pace, and any limitation in dealing with stress. (T. 18.)

Essentially, Plaintiff argues that the ALJ's hypothetical should have accounted for additional limitations; however, for the reasons stated herein, substantial evidence supported the ALJ's assessment of the medical opinion evidence in the record and his mental RFC determination was supported by substantial evidence in the record. Therefore, the ALJ was not required to include any additional mental limitations in the hypothetical posed to the VE and the ALJ properly relied upon the VE's testimony in making a step five determination. For the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's step five determination be upheld. **ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

19

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 2, 2017

_____
William B. Mitchell Carter
U.S. Magistrate Judge